Case 19-1037, Joshua Tackett v. Tony Trierweiler, argument not to exceed 15 minutes per side. Ms. Sutton, you may proceed for the appellant when ready. Good morning, Your Honors. Good morning. Laura Kathleen Sutton on behalf of Joshua Tackett, and I am reserving two minutes for rebuttal if necessary. Very well. And I'm going to rest my unanimity, instruction, and ineffective assistance of counsel arguments on my pleadings. I'm going to concentrate my time on the sufficiency of evidence argument as it relates to the premeditation and deliberation elements of the first degree murder charge and the due process and equal protection claims as it relates to the disparate verdicts of the two more culpable co-defendants, as I believe these claims are inexplicably linked. Okay. I mean, there are two ways to look at this. One is just looking at his case and arguing that the evidence . . . no reasonable jurist could ever find that any rational jury could convict the person based on this record. I mean, it's a formidable sort of double-decker. Yes, it is. I also understand your brief. You seem to be arguing sometimes that the sort of different outcomes for your client and some of the other people, first degree versus second, is somehow violative of the Constitution. And just, I mean, maybe just as sort of a housekeeping matter up front here, I don't see any Supreme Court authority anywhere to support the proposition that, you know, a state court jurist can't or must recognize grant relief or something based on that differential. There's just no Supreme Court case that backs that up. So, I mean, are we agreed that you can't get relief here on a theory that your client got a different outcome than somebody else from a different jury? Okay. If I understand your question correctly, yes. There's the two issues that I'm raising. First is the sufficiency of the evidence on a sufficiency claim, and that has to do with the jury's determination. Right. The second one is the fact that we are claiming an equal protection violation. Okay. So there are two different claims. You're focused on sufficiency. As to equal protection, I mean, you do understand in a habeas case, you have to point to, and it's a 2254, the question is whether the state court unreasonably applied Supreme Court precedent. I understand that. Right? So that means there has to be Supreme Court precedent. And I just don't see any for the equal protection claim and some other claims. I understand you're not going to focus on those today, and I guess we got that cleared up, but I'm not really sure how the claim got here without having Supreme Court authority on which it could be based. Well, basically, we rested our equal protection claim more broadly on Griffith's. Okay. I know, and I agree with you. I mean, in preparing for argument and doing this case, there's very little law here. I can't, I mean, I've been looking, and if I could find it, I would be citing it to you chapter and verse. But what I'm saying here. If you don't, I mean, the bottom line is if you don't have a Supreme Court case, then under AEDPA, you lose. So. Well, I agree that. There appears to be Supreme Court cases that say the opposite of what you're arguing. So that's, I think, all we were trying to telegraph to you is that second one is a pretty hard one to make. So we were trying to avoid spending a lot of time on that, but we've ended up doing the opposite. So you really want to argue insufficiency, right? Yes. All right. We'll get out of your way. Now, if we sharpen up your insufficiency argument, which you haven't made yet, it seems to me your argument simply almost disregards the aider and abetter issue here. So if your argument was there wasn't sufficient evidence to show that he actually fired the shot from the handgun example because of the problems with the bullet found in one of the heat ducts or whatever it was, all that's well and good. But the jury seemed to have more than enough basis here to show that he was an aider and an abetter, as that term is defined under Michigan law. So how do you get around that? Well, what we have attacked in the sufficiency argument is the intent to kill. We know that Joshua Tackett rode in the van with the other individuals. We also know that he wasn't there at the first incident. He agreed to tag along. He was there. But the fact that can you, from the evidence presented in the trial, show that he had an intent to kill these people? Well, I mean, we start with the fact that these people shot up the trailer. They put a lot of rounds into this trailer. Correct. It's not a big trailer. No, it's not. It's not like it's some five-bedroom log cabin. The rounds are flying through the trailer. I mean, can't a jury infer from just the amount of metal moving through this small space that they did intend to kill people in there? Basically what this jury could infer is that these actions were highly negligent. It was determined from the testimony that this decision to shoot at the trailer was made at the very last minute. They were going to come and avenge an earlier event. Mr. Tackett just basically tagged along. He did not fire an automatic weapon into the trailer.  I get that. I guess my point is the number of rounds and the nature of the structure would seem to support an inference that they meant to kill somebody in there. But did Mr. Tackett mean to kill somebody? That's the issue. Judge McKeague makes a point about a later and a better. Yes, I understand. And that's a very difficult hurdle for defense counsel when you've got that theory. The other problem is that reading Michigan law, the court seems to be pretty clear that you don't have to have as much evidence as one might think you had in order to infer an intent to kill. They speak in terms of minimal circumstantial evidence is sufficient to establish a defendant's intent to kill. There does seem to be at least some quantum of circumstantial evidence here. Would that be your statement? What we're arguing here is that Mr. Tackett's actions or the actions, like the actions of the co-defendants Tard and Sykes, as was found by the trial court judge, they were extremely reckless and negligent. But they're not premeditated and calculated as defined for a first degree murder. Maybe they are, maybe they aren't. Neither side seems to cite the case, the Michigan case of People v. Brown. I know I'm springing this on you, but are you aware of that case? I would have to review it, Your Honor. So People v. Brown deals with shooting up a house, a drug house. Okay. And what the court says is evidence that defendant fired several shots into a house at a time when people were likely to be present and fired the shots, quote, below the windows, end quote, i.e. at a height calculated to strike an occupant, was evidence of an intent to kill. That seems to me to be precisely what happened here. And it may well be that your client didn't fire any of the shots, but he certainly took steps that seem to have encouraged and aided abetted the people that fired the automatic weapon under facts that seem precisely the same as People v. Brown. But also included within the second degree murder instruction, which is a lesser included offense in Michigan, their intent is, for second degree, is intent to kill, intent to create grave bodily harm, or reckless and deliberate indifference to any actions that that would cause. And under the facts of this case, that intent is clearly satisfied, and we're not saying that it is not. But it is clearly satisfied here, as opposed to the specific intent to kill that's required for first degree murder, and particularly on the part of Mr. Tackett. Do you agree that could a reasonable jury have determined that Tackett was guilty of second degree murder? I believe that they could, Your Honor. Yes. Well, if that's so, but if part of the definition of second degree murder is it has to be with malice, wouldn't that show intent to kill? Well, intent to kill is not premeditated and deliberated as the first degree intent. It is an intent to kill, an intent to create great bodily harm, as opposed to intent to murder from first degree. And also, and more importantly, under the facts of this case, is a showing of negligence and extreme disregard for the consequences of their actions. And that's what shouts out loud and clear in this case. This was a stupid incident. They decide to avenge an earlier interaction, which my client wasn't even a part of, and they decide to come back and fire around at the trailer. Right before they get there, one of the co-defendants, not Mr. Tackett, decides why don't we just fire at the house. That is also, and there were lights on, that's true, so that is an indication. I'm reading from the Michigan Court of Appeals, says that as they waited, the van pulls over, waits for a patrol car that left the area. As they waited, co-defendant Tard said, quote, let's shoot up the trailer, and defendant Tackett went along with him. If that's in fact what the court found, I mean, that's aiding and abetting at least, isn't it? Mr. Tackett, the Michigan Court of Appeals said Mr. Tackett went along with it. There's no indication from the trial court record that Mr. Tackett said, yeah, let's do this, let's not do this. Well, even if he didn't say anything. He said nothing. The record indicates he moved to the back of the van where the window is out, presumably to more easily shoot if he was going to shoot. He provides gloves or socks to the other folks that you claim are the real perpetrators here. Again, isn't that all aiding and abetting? All of which occurred after this, I'm just going to tag along because this sounds fun, ends, and now it clearly becomes a plan to shoot up the trailer. Well, the Court of Appeals and the appellee make much to do about the fact that as they were approaching this trailer park, they pulled over because they saw a police car, and that's when one of the co-defendants said, let's shoot at the house. That action of simply pulling over to avoid detection, they would have done that even if they were going to just simply destroy the property. They don't want to be detected. They've got guns in the car, and they have this scraggly looking van with a back window shot out. They're a target for police intervention, so sure they're going to pull over to try to avoid detection. But what we're arguing here is simply that in this particular case, all these defendants were charged with open murder, which of course in Michigan means the jury or the fact finder could go up or down between first and second degree. Basically, what we have here is the same trial, albeit once in front of two separate juries, but the same facts presented, one trial, and the circuit court judge sitting as a finder of fact. Basically, what we have here is after the bench trial, circuit court judge does do concise statements of facts and conclusions of law, and he finds that as to the co-defendants, the same killings were second degree murder. Now, you juxtapose Mr. Tackett's actions on those of his co-defendant Sykes and Tard, and that's what you find. Now you're morphing into the inconsistency because a jury finds one thing and a state judge finds something else in connection with the bench trial. Correct. So that doesn't mean there wasn't sufficient evidence for the jury to have found what they found. It just means the state judge viewed it differently. Well, I respectfully disagree. I think that there's insufficient evidence as to the premeditation and deliberation aspect of first degree as to Mr. Tackett, and that's my claim that that intent is actually intent for second degree as correctly found by the circuit court judge. Very well. You'll have your rebuttal. We'll hear from the state. Good morning, Your Honors, and may it please the Court. Rebecca Burrell is Assistant Attorney General on behalf of the Respondent Appellee, Warden Tony Trierweiler. I want to avoid regurgitating a lot of what I said in my brief and just focus on the sufficiency claim and what I think is kind of interrelated, the inconsistency claim, because it appears that Mr. Tackett's claiming that because the verdicts were inconsistent, because two co-defendants were found to be guilty of second degree murder, as a matter of law, that means that there's insufficient evidence of first degree murder here, and that is not the law. As Your Honors have pointed out, inconsistent verdicts are constitutionally tolerable. The issue here and the standard for sufficiency is whether the state court reasonably determined that a rational juror could have found the intent required for first degree murder, and I think here we have plenty of evidence of intent. We have plenty of evidence of premeditation and deliberation and evidence that Mr. Tackett did aid and abet his co-defendants in shooting up this trailer, and so I think that there is more than sufficient evidence of intent, and the trial court standard in adjudicating his co-defendants guilty of second degree murder was beyond a reasonable doubt, and that's not the standard we have for sufficiency. You know, what troubles me is I'm looking at Michigan law that talks about what it takes to show first degree murder. It says it requires more than mere conscious indifference to the likelihood of death. That's people v. Milton, and then, in other words, a very high risk of death intent is insufficient for first degree premeditated murder.  That's people v. Dyckhouse, D-Y-K-H-O-U-S-E, Michigan, 1984. Here, you know, they weren't pointing a gun at someone when they shot. I mean, they were just shooting up a trailer. They didn't obviously know, even though they may have suspected someone might be inside. Of course, we know two people died, in fact, but, you know, how do you get around these cases that talk about a very high risk of death intent is insufficient for first degree murder? Well, I think, and I will concede that a rational juror could have found second degree murder here, but a rational juror could have also found first degree murder, and they, in fact, did find first degree murder, and we have evidence that the lights were on in the trailer. We have evidence that the trajectory of the bullets was aimed at where these lights were. We have evidence that the bullets were calculated at a height that would strike a human, and People v. Brown, as Judge McKeek cited earlier, states that that's first degree premeditated murder. You didn't cite state murder. I did not. I apologize for that, Your Honors, but Judge McKeek didn't throw me a bone there. I like it. I do like that one, yes. Of course, that case is unpublished, isn't it? I don't know for sure, Your Honor. So, you know, it's not precedential, but it's out there. Right. But in addition to all of that evidence of intent just from the location of the shots and the fact that a light was on in the trailer, we did have two people that were shot in their mid-back, and then we have motive, and then we have assault rifles that were brought to shoot through this trailer. It would be different maybe if this was a brick house or something along those lines, but this was a small, single-wide trailer home with aluminum walls. What significance do we attach, if anything, to the fact that People v. Dyckhaus, which Judge Gilman accurately quoted from as a 1984 case, and if that's where the law stopped, it seems to me you have a heavier load to bear here. But then the Michigan courts go on in Unger in 2008, and they seem to lower the bar from what otherwise Dyckhaus had set. Is that how you read the law? I read the law as first-degree murder requires an intent to kill in Michigan. But we're talking about what is the quantum of evidence necessary to show an intent to kill. Minimal circumstantial evidence. So I would say in Michigan, minimal circumstantial evidence is required to show an intent to kill. And that's from Unger in 2008. That's a Michigan Court of Appeals case. Michigan Court of Appeals can't overrule the Supreme Court in People v. Dyckhaus. But the Supreme Court didn't state that, as I'm understanding Judge Gilman's citation to that case, they didn't state the quantum of evidence that's required to show intent to kill. That statement of intent was that if the evidence shows just a reckless disregard for life, then we don't have intent to kill. But I think the evidence here shows an intent to kill and can reasonably be inferred to show an intent to kill. It's got to show more than a conscious indifference to the likelihood of death. That's not enough. A very high risk of death is insufficient. You can infer simply if someone shoots up a trailer that that will somehow show actual intent to kill? Well, I think there are elevating circumstances that exist here, that it's not someone just shooting up a trailer. It's not someone shooting the gutters. It's not someone shooting the roof of the trailer. Mr. Tackett and his co-defendants kept their shots around the area where the lights were on in the trailer. Was the vehicle stopped when they were shooting? There was conflicting evidence as to whether the vehicle was stopped or if it was just sort of rolling by. So a jury could find it was stopped. It was stopped, yes, correct, Your Honor. Relatively tight grouping, so to speak. I mean, it's not just sort of all over the place. It seemed like they were going for where people might be, arguably. That's correct, Your Honor. I wonder, do you think they were trying to shoot Mr. Owsley, who was the one who threw the crowbar earlier in the day? Because they didn't hit Mr. Owsley. I mean, they hit two teenagers. That's correct. I do believe that they possessed the intent to kill Mr. Owsley based on that altercation earlier in the day, and it just so happened that they hit other people that were inside the trailer. But when they were shooting, they possessed the intent to kill Mr. Owsley, and that intent then transferred to the deaths of the other two. So unless Your Honors have any further questions, that's all I have, and I rest on my briefs. Very well. Thank you for your argument, your brief rebuttal. Yes. My sister counsel said that you could form, that they had this specific intent and they were going to come back and kill Mr. Owsley based upon a previous altercation that day. Mr. Tackett was not present for that altercation. By all accounts, he was not there. So whether Mr. Tackett had this specific intent of the other two co-defendants who were there, that has not been proven. I didn't understand that argument first, and I don't understand it now, because Tackett doesn't claim that he didn't know why he got in the van, and he didn't know that they were driving to Ypsilanti, and he didn't know that it was because of an earlier altercation. He knew all that when he agreed to go with them, didn't he? He knew that they were going to avenge an earlier altercation. That's correct. But what difference does it make from a practical sense, whether he was a part of it or he's going along with his buddies to help him avenge? He was going along with his buddies to avenge destruction to a van. He was not going along to kill Clint Owsley. I think that is a practical application of what we're saying here. So if we accept that, and I think that's a probably pretty reasonable argument under the facts, at some point it seems to have changed from avenging the window by damaging a trailer to shooting up a trailer at night into the area where the lights are on at a height that's designed to hit people. So something changed. But that was not attributed to Mr. Tackett. One of the co-defendants said, let's shoot at the trailer. Mr. Tackett did not shoot at the trailer by all accounts. He had a handgun that either misfired, jammed. He did not shoot, and it was a last-minute, spur-of-the-moment, not a premeditated, calculated, and deliberated plan to do something here. Before my time runs out, I just wanted to say one thing. I know this panel is not particularly enthralled with my argument on the disparate sentences, but this case does represent an extreme malfunction of the Michigan criminal justice system because here the presiding state court trial judge found that the disparate verdicts resulted in a miscarriage of justice. He believed it did. How do we know that the miscarriage here wasn't in connection with the judge's findings in the bench trial in the second case? Well, he sat through both trials. You're just assuming that the state judge got it right, and therefore the jury got it wrong. How do we know it is the opposite? I'm basing my argument on the fact that the state court trial judge provided detailed statement of facts and conclusions of law before he rendered his opinion. In the jury trial, a jury verdict is sheltered from that. You don't know what the jury thought in reaching their first-degree determination with regard to Mr. Tackett. The jury may have been so, by this reckless action of these individuals, the jury may have been so morally repulsed that they said, okay, it's first-degree for everybody. We don't know, and we can't know. Well, we have to decide, could any fair-minded jurors reach that decision? And if so... I believe by looking, if the jurors looked at the law and they looked at it carefully, they would come back with a second-degree determination. And that's all we're asking for here. Very well. Thank you. The case will be submitted. Clerk may adjourn court.